IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ADAN SANCHEZ | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO: 4:11-cv-03855 |
| | § | |
| HACIENDA RECORDS AND | § | |
| RECORDING STUDIO, INC., | § | |
| HACIENDA RECORDS, L.P., A/K/A | § | |
| HACIENDA RANCHITO AND/OR DISCOS | § | |
| RANCHITO, LATIN AMERICAN | § | |
| ENTERTAINMENT, LLC, ANNIE | § | |
| GARCIA, RICK GARCIA, ROLAND | § | |
| GARCIA, SR., AND LEONARDO QUIROZ | § | |
| D/B/A JEDASA PUBLISHING COMPANY | § | |
| | § | |
| Defendants. | § | JURY TRIAL DEMANDED |

**PLAINTIFF'S, ADAN SANCHEZ, MEMORANDUM TO THE COURT
REGARDING CASE STATUS AND REMAINING ISSUES**

TO THE HONORABLE COURT:

COMES NOW Plaintiff, Adan Sanchez, and, per the Court's August 26, 2014, Memorandum and Opinion (Doc. No. 104), files this Memorandum Regarding Case Status and Remaining Issues. Sanchez believes that the following additional issues remain in this case, and must be resolved:

### I. Breach of Contract Claim

1.  On April 23, 2012, Sanchez filed his First Amended Complaint (Doc. No. 16), which alleged claims against Defendants, including: copyright infringement, breach of contract, and fraud.[1] Sanchez's breach of contract claim is based on several written licenses and a "negotiated implied

---

[1] Sanchez's breach of contract claim is fully set forth in Doc. No. 16, PP. 10-11, ¶¶ 23-26

license" allegedly by and between Defendants and Jedasa Publishing Company for use of the musical composition, "La Prieta Casada." (Doc. No. 16, P. 10, ¶ 24).[2]  Sanchez has standing to bring the breach of contract claim through his ownership interest in "La Prieta Casada" and through an assignment in rights and interest he received from Jedasa Publishing Company.[3]

    2.    On June 29, 2012, Defendants filed a Motion for Summary Judgment that moved on all of Sanchez's claims– including breach of contract (Doc. No. 28).[4]  However, the Motion was largely silent on the breach of contract claim and was primarily devoted to attacking the copyright infringement claim.  Throughout the Motion, Defendants refer extensively to purported licenses and agreements as a defense for their infringing activities (Doc. No. 28, PP. 20-22, ¶¶ 34-38).

    3.    On February 11, 2013, the Court entered a Memorandum and Order denying Defendants' Motion for Summary Judgment with respect to the breach of contract and copyright infringement claims (Doc. No. 49).  With respect to the breach of contract claim, the Court stated as follows:  "In light of the burden Hacienda bears to establish its affirmative defense of license, summary judgment based on the combination of some express licenses and a general implied license is not appropriate on the current record." (Doc. No. 49, PP. 13-14).

    4.    At a January 17, 2014, discovery hearing before the Court, Defendants verbally requested permission to file a new Motion for Summary Judgment based on "new and recently

---

[2] The "negotiated implied license" is discussed throughout Rick Garcia's July 12, 2012, deposition, and specifically at 8:8-8:24 and 9:17-10:15.  The written licenses at issue are Exhibit A of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. No. 18).

[3] Jedasa Publishing Company's assignment of interest to Adan Sanchez is Exhibit E of Plaintiff's Response to Defendants' Motion for Summary Judgment (Doc. No. 88).

[4] On May 5, 2012, Defendants filed a Motion to Dismiss (Doc. No. 18), which later was converted into a Motion for Summary Judgment (Doc. No. 19). Thus, the Motion for Summary Judgment (Doc. No. 28) is titled "Defendants' Supplement to the Motion for Summary Judgment."

discovered case law" (Doc. No. 78).[5] Defendants stated that the "new case law" related to Sanchez's copyright infringement claim. However, no mention was made of the surviving breach of contract claim. The Court granted Defendants' request and allowed them to file a second Motion for Summary Judgment (Doc. No. 78).

5. On January 31, 2014, Defendants filed their second Motion for Summary Judgment (Doc. No. 83), based on the *Seven Arts* case. The Motion alleged that, per *Seven Arts*, Sanchez "lacked standing to bring some or all of the copyright claims" (Doc. No. 83, P. 2, ¶ 2). The Motion for Summary Judgment moved only on Sanchez's copyright infringement claim. It did not attack or even discuss the breach of contract claim, other than briefly acknowledging that the claim exists (Doc. No. 83, P. 2, ¶ 3).

6. Sanchez filed the breach of contract claim as an alternative claim, based on Defendants' representation and insistence that they have a license to exploit "La Prieta Casada" and the entire Jedasa catalog (Doc. No. 16, P. 10, ¶ 24). It is separate and distinct from the copyright infringement claim. The breach of contract claim survived Defendants' first Motion for Summary Judgment (Doc. No. 28; Doc. No. 49); and was not even addressed in Defendants' second Motion for Summary Judgment (Doc. No. 83). Thus, Sanchez's breach of contract claim is alive, unresolved, and not subject to final judgment at this time. Sanchez respectfully requests that his breach of contract claim proceed to trial and be determined by a jury, as requested in his pleadings (Doc. 16, P. 16, ¶ 38).

---

[5] The "new case law" Defendants discovered is *Seven Arts Filmed Entertainment Ltd. v. Content Media Corp., PLC*, 733 F.3d 1251 (9th Cir. 2013), which serves as the basis for their second Motion for Summary Judgment (Doc. No. 83).

## II. Fraud Claim

7.     Sanchez's First Amended Complaint included a claim for fraud and fraudulent misrepresentation, based on Defendants' falsification of records and failure to provide accurate royalty payments and accountings for the exploitation of "La Prieta Casada" (Doc. No. 16, PP. 11-13, ¶¶ 27-30).  On May 10, 2012, Defendants filed their Motion to Dismiss the First Amended Complaint (Doc. No. 18).  The Motion included a request for dismissal of the fraud claims on grounds that such claims were "vague and conclusory"(Doc. No. 18, P. 7).  On May 11, 2012, the Court granted Defendants' Motion with respect to Sanchez's fraud claims and dismissed such claims with prejudice (Doc. No. 19).  The Court did not allow Sanchez an opportunity to amend or replead with more specificity, and has sharply curtailed discovery from the onset.

8.     On August 26, 2014, the Court granted Defendants' second Motion for Summary Judgment with respect to Sanchez's copyright infringement claims (Doc. No. 104).  One of the documents the Court considered when dismissing Sanchez's copyright infringement claim was an October 13, 2011, letter from Defendants to Sanchez's counsel.[6]  The Court gave a great deal of credence to the letter, and even quoted part of it in the Memorandum and Opinion, as follows:

> "Hacienda...sent Sanchez a check in the amount of $227.50 for royalties for recent uses of La Prieta Casada, 'in a spirit of good will, time efficiency and an effort to do the right thing.'" (Doc. No. 104, P. 4).

9.     Throughout the course of this case, Sanchez discovered evidence showing that the representations Defendants made in the October 13, 2011, letter are patently false. During discovery, Defendants produced sales and manufacturing records for products containing "La Prieta Casada."

---

[6] The October 13, 2011, letter is Exhibit L of Defendants' Supplement to their Motion for Summary Judgment (Doc. No. 28).

These records show that the royalties owed Sanchez far exceed $227.50.[7, 8]  However, neither Sanchez nor Jedasa ever received any royalties or accountings for Defendants' exploitation of "La Prieta Casada."[9]

10.     Evidence and information received from third party publishers shows that Defendants falsely and fraudulently represented paltry sales of "La Prieta Casada" to Sanchez in their October 13, 2011, letter.  Thus, Sanchez respectfully requests that the Court give reciprocal consideration to the letter, and re-urges his fraud and fraudulent misrepresentation claims.

11.     Sanchez has ample evidence that Defendants falsified release dates, renewal dates, and claims of copyright ownership on many products they manufactured and sold.

12.     Sanchez asks that the Court reconsider dismissal of such claims in light of the sales and production records produced throughout discovery, which provide sufficient circumstantial evidence to survive a 12(b)(6) Motion to Dismiss.  Sanchez should be allowed to prove his fraud claims at a jury trial.

### III. Ownership of "La Prieta Casada"

13.     In its Memorandum and Opinion, the Court stated that the "gravamen of [this] case is ownership." (Doc. No. 104, P. 17).  It also stated that the "ownership history" of "La Prieta Casada" makes identifying the owner difficult (Doc. No. 104, P. 4).  Defendants did muddy the

---

[7] See the Expert Witness Report of Wayne C. Coleman, and all exhibits attached thereto (Doc. Nos. 90-1 and 90-2).

[8] Per Rick Garcia's testimony, Hacienda engaged in a product trade-out for "royalties," which they did not track or account for.  This product exchange is not reflected in sales records.  See July 12, 2012, deposition testimony of Rick Garcia at 34:20-37:20.

[9] See Leonardo Quiroz's September 5, 2013, deposition testimony at 133:5-134:1; see also Adan Sanchez's August 2, 2012, deposition testimony at 65:16-65:22.  Both Quiroz and Sanchez testify that they did not receive payments or mechanical royalties from Defendants.

waters with respect to ownership through a multitude of arguments. However, it its previous Memorandum and Order denying Defendants' first Motion for Summary Judgment, the Court found, "...Hacienda does not dispute the record evidence that Sanchez owns the copyright to *La Prieta Casada* at this time." (Doc. No. 49, P. 12).

14. Sanchez respectfully disagrees that the ownership history of "La Prieta Casada" is in doubt. Sanchez is the author and copyright owner of "La Prieta Casada," and any confusion as to ownership was manufactured by Defendants in an effort to avoid liability for their unauthorized infringement.

15. In the recent Memorandum and Opinion, the Court discusses the various copyrights filed for "La Prieta Casada" (Doc. No. 104, PP. 2-3).[10] Evidence and testimony produced throughout this case explain any discrepancies or confusion perceived due to the multiple copyrights.

- In 1976, Johnny Herrera filed a copyright registration for "La Prieta Casada" and identified Jedasa Publishing Company as the publisher and copyright owner (Doc. No. 31, Ex. B, PP. 3-4). Sanchez does not read, write, or speak English.[11] Therefore, he asked Herrera to help him file a copyright registration for "La Prieta Casada."[12] When Sanchez learned that Herrera identified himself as the copyright owner and Jedasa as the publisher, Sanchez filed suit against him.[13] The suit was not resolved in Court.[14] However, Quiroz testified that Sanchez and Herrera agreed outside of Court that Sanchez owns all rights and interests in and to "La Prieta Casada," and that Hacienda knew it.[15] Jedasa relinquished any and all claims to "La Prieta

---

[10] The copyrights referenced by the Court are attached to Plaintiff's Response to Motion for Summary Judgment as Exhibit B (Doc. No. 31).

[11] Doc. 77-2, July 30, 2012, Deposition of Adan Sanchez at 11:5-11:18

[12] *Id.* at 23:5-23:19

[13] *Id.* at 23:25-25:7

[14] *Id.* at 24:10-13

[15] Doc. 83-6; September 5, 2013, Deposition of Leonardo Quiroz at pp.12:19-14:19; 14-16

> Casada."[16] Leonardo Quiroz, the current owner of Jedasa, stated under oath that he believes Sanchez owns "La Prieta Casada."[17]

- In 1984, San Antonio Music Publisher ("SAMP") filed a copyright registration for "La Prieta Casada" (Doc. No. 31, Ex. B, PP. 6-7). Sanchez and SAMP had an agreement where SAMP collected royalties on behalf of Sanchez in the United States and Mexico.[18] SAMP filed the copyright registration to protect its rights from Jedasa's competing copyright.[19] The administration relationship between Sanchez and SAMP ended in 1991.[20] Javier Gutierrez, president of SAMP, stated under oath that SAMP has no ownership interest in "La Prieta Casada."[21] Gutierrez also stated under oath that he believes Sanchez owns "La Prieta Casada."[22]

- In 1994, Sanchez filed a copyright for "La Prieta Casada." (Doc. No. 31, Ex. B, PP. 8-9). In 2004, he filed a copyright renewal (Doc. No. 31, Ex. B, PP. 10-11).

These latter two registrations, along with the others were public information available to Hacienda. Hacienda can't repudiate a copyright just because they say so and then proceed to infringe and continue to infringe. There is nothing about these registrations that gives Hacienda or anyone else the right to infringe and to continue to infringe. Sanchez disputed receiving the letter the Court terms a repudiation and Hacienda has no proof it was received by anyone on his behalf. Quiroz testified in his deposition at pp.15, l.21-16. l.4, that contrary to the representations in the letter, that Hacienda never came to Jedasa to review Jedasa's files.

---

[16] *Id.* at 146:18-148:1

[17] *Id.* at 144:16-145:6

[18] Doc. 83-3; September 11, 2013, Deposition of Javier Gutierrez at 10:2-11:11

[19] *Id.* at 42:2-42:11

[20] *Id.* at 10:9-10:11

[21] *Id.* at 23:23-24:3

[22] *Id.* at 24:8-24:12

16.     All of the various copyrights identify Sanchez as the author of "La Prieta Casada;" and the evidence and testimony offered in this case make clear that Sanchez is the owner of "La Prieta Casada."  However, the Court's recent Memorandum and Opinion, written in the vein of a final judgment, expresses doubt over Sanchez's ownership status.  While the Court made numerous findings of fact, the Court did not analyze whether the documents referred to, including the May 1995 letter Hacienda claims it sent, related to administration, publishing or ownership, all very distinct rights.  Sanchez believes that this opens a Pandora's Box for future infringers and gives them free reign to exploit "La Prieta Casada" and later claim ignorance or confusion over ownership.  Therefore, Sanchez respectfully requests that the Court issue a declaration with respect to the ownership of "La Prieta Casada" and all rights appurtenant thereto.  Sanchez made a request for declaratory judgment on this and other matters in his First Amended Complaint (Doc. No. 16, P. 13, ¶¶ 31-32).

## IV. Status of Sanchez's Copyright for "La Prieta Casada"

17.     The purpose of copyright law is to encourage the creation of art by securing for creators the "exclusive entitlement to resulting financial rewards." *Leibovitz v. Paramount Pictures Corp.*, 948 F. Supp. 1214, 1218 (S.D.N.Y. 1996).  In its Memorandum and Opinion, the Court stripped Sanchez of such benefits and essentially voided his copyright.  The Memorandum and Opinion stated, "the summary judgment evidence establishes that an ownership dispute concerning La Prieta Casada has existed since at least 1995, meaning that Sanchez's copyright claims accrued in 1995 and the limitations period expired in 1998." (Doc. No. 104, P. 13).  This language suggests that any infringer from 1998 onward has a free license to exploit "La Prieta Casada" without repercussion– even if they were not party to the lawsuit between Sanchez and Herrera (Doc. No. 104,

P. 16, FN 5). Unfortunately, the Court did not analyze the distinction between administration, publishing or ownership.

18.     The Court's decision has a significant impact on Sanchez's ownership rights and ability to protect his intellectual property. Defendants in a separate copyright infringement case already filed notice of the Memorandum and Opinion (Doc. No. 104) in an attempt to avoid liability for their unauthorized infringement of "La Prieta Casada." See Doc. No. 237 and Doc. No. 237 in *Guajardo et al. v. Freddie Records, Inc., et al.*; Case No. 4:10-cv-2024; United States District Court, Southern District of Texas, Houston Division. As in this case, those Defendants were not party to or involved in any way in the dispute between Sanchez and Herrera. Yet, they are using this Court's decision to argue that Sanchez's claim is time-barred.

19.     Sanchez respectfully disagrees with the Court's decision and believes it goes beyond the scope and intention of the Court in the *Seven Arts* case. The language in the Memorandum and Opinion also disregards the limitations period set forth in the United States Copyright Act, which provides a three year rolling statute of limitations that starts over for each new infringement. 17 U.S.C § 507(b). However, since the Court utilized this language, Sanchez requests that it enter a declaratory judgment clarifying the status of his copyright for "La Prieta Casada" and any value it may retain.

20.     This Memorandum is without prejudice to, and not in lieu of, a Motion to Amend or Alter, a Motion for New Trial, or any other relief Sanchez may request.

S:\2127.04\Memo to Court re Status of Case 9.8.14\Memorandum to Court re Status of Case.wpd
9-8-14

9

WHEREFORE, PREMISES CONSIDERED, Sanchez respectfully requests that the Court consider the issues set forth above and resolve them as necessary. Sanchez seeks such other and further relief to which he may prove himself entitled.

        Respectfully submitted,

        SHOWALTER LAW FIRM

        By: /s/ David W. Showalter
            David W. Showalter
            TBA # 18306500
            S.D. I.D. 5703

        1117 FM 359, Suite 200
        Richmond, Texas 77406
        (281) 341-5577
        (281) 762-6872 (Facsimile)

        ATTORNEY FOR PLAINTIFF
        ADAN SANCHEZ

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2014, a true and correct copy of the foregoing was served on counsel for Defendants through the Court's ECF System.

        /s/ David W. Showalter
        David W. Showalter