IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ADAN SANCHEZ | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO: 4:11-cv-03855 |
| | § | |
| HACIENDA RECORDS AND | § | |
| RECORDING STUDIO, INC., | § | |
| HACIENDA RECORDS, L.P., A/K/A | § | |
| HACIENDA RANCHITO AND/OR DISCOS | § | |
| RANCHITO, LATIN AMERICAN | § | |
| ENTERTAINMENT, LLC, ANNIE | § | |
| GARCIA, RICK GARCIA, ROLAND | § | |
| GARCIA, SR., AND LEONARDO QUIROZ | § | |
| D/B/A JEDASA PUBLISHING COMPANY | § | |
| | § | |
| Defendants. | § | JURY TRIAL DEMANDED |

**PLAINTIFF'S MOTION TO ALTER OR AMEND
MEMORANDUM AND OPINION (DOC. NO. 104)**

TO THE HONORABLE COURT:

COMES NOW Plaintiff, Adan Sanchez, and brings this Motion to Alter or Amend the Memorandum and Opinion granting Defendants' Motion for Summary Judgment with respect to his copyright infringement claims (Doc. No. 104). In support of this Motion, Sanchez shows as follows:

**I. REQUEST FOR RELIEF**

1. Sanchez respectfully requests that the Court render an amended judgment that: a) declares that Sanchez is the copyright owner of his musical composition, "La Prieta Casada;" b) holds that Defendants did not repudiate Sanchez's ownership of "La Prieta Casada" or, in the alternative, failed to effectuate such repudiation to Sanchez; c) allows Sanchez to pursue

infringement actions against persons and entities who knowingly and intentionally exploited "La Prieta Casada," including Defendants; and d) allows Sanchez to pursue his breach of contract or other claims.

## II. INTRODUCTION AND BACKGROUND

2. Plaintiff is Adan Sanchez ("Sanchez"). Defendants are Hacienda Records and Recording Studio, Inc., Hacienda Records, L.P., Latin American Entertainment, LLC, Annie Garcia, Rick Garcia, and Roland Garcia, Sr. (collectively "Defendants").

3. On April 23, 2012, Sanchez filed his First Amended Complaint (Doc. No. 16), alleging claims of copyright infringement, breach of contract, and fraud against Defendants. On January 31, 2014, Defendants filed their Second Motion for Summary Judgment attacking Sanchez's copyright infringement claim (Doc. No. 83). The Second Motion for Summary Judgment was based on the *Seven Arts* case, arising from the Ninth Circuit.[1] Defendants used this "newly discovered case law" to argue that Sanchez is time-barred from making a copyright infringement claim with respect to his musical composition, "La Prieta Casada."

4. On August 26, 2014, the Court issued its Memorandum and Opinion (Doc. No. 104), in favor of Defendants. In the Memorandum and Opinion, the Court dismissed Sanchez's copyright infringement claim based on its interpretation of *Seven Arts*.[2] The Memorandum and Opinion was written in the vein of a final judgment and is considered a dispositive ruling with respect to Sanchez's copyright infringement claim.

---

[1] See *Seven Arts Filmed Entertainment, Ltd. v. Content Media Corp., PLC*, 733 F. 3d 1251 (9th Cir. 2013)

[2] Sanchez's breach of contract claim was not briefed in or subject to the Second Motion for Summary Judgment (Doc. No. 83) nor the Memorandum and Opinion (Doc. No. 104). The breach of contract claim still stands and is not subject to dismissal.

5.      Per Federal Rule of Civil Procedure 59(e), Sanchez files this post-judgment motion to alter or amend the Memorandum and Opinion (Doc. No. 104).  This motion does not seek relief from the judgment under Federal Rule of Civil Procedure 60.

6.      The Clerk entered its Memorandum and Opinion on August 26, 2014.  Sanchez files this motion on September 23, 2014, which is within 28 days of the entry of the Memorandum and Opinion.

### III. ARGUMENT

7.      The Memorandum and Opinion should be altered or amended to prevent a clear error or manifest injustice.  *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 301-02 (4th Cir. 2009); *Duarte v. Bardales*, 526 F.3d 563, 567 (9th Cir. 2008); *Intera Corp. v. Henderson*, 428 F. 3d 605, 620-21 (6th Cir. 2005).  In its current form, the Memorandum and Opinion gives infringers a free license to exploit Sanchez's intellectual property and copyright-protected work, "La Prieta Casada," without any repercussions.

8.      Sanchez believes that the Memorandum and Opinion, as written, goes well beyond the scope of the *Seven Arts* case and United States copyright law.  It strips Sanchez of all rights and any value appurtenant to a valid United States copyright, and sets a dangerous precedent for artists attempting to protect their valuable intellectual property from infringers.  As such, Sanchez respectfully requests that the Court amend or alter its Memorandum and Opinion, as fully described herein.

#### A. Declaration of Ownership

9.      In the Memorandum and Opinion, the Court stated that the "gravamen of [this] case is ownership." (Doc. No. 104, P. 17).  It also stated that the "ownership history" of "La Prieta

Casada" makes identifying the owner difficult (Doc. No. 104, P. 4).  Sanchez respectfully disagrees that the ownership history of "La Prieta Casada" is in doubt, and respectfully requests that the Court amend its Memorandum and Opinion and issue a declaration that he is the copyright owner of "La Prieta Casda."[3]

10.     Sanchez is the author and copyright owner of "La Prieta Casada," and any confusion as to ownership was manufactured by Defendants in an effort to avoid liability for their unauthorized infringement.  Defendants did muddy the waters with respect to ownership through a multitude of arguments.  However, it its previous Memorandum and Order denying Defendants' first Motion for Summary Judgment, the Court found, "...Hacienda does not dispute the record evidence that Sanchez owns the copyright to *La Prieta Casada* at this time." (Doc. No. 49, P. 12).

11.     In its Memorandum and Opinion, the Court takes issue with the various copyrights filed for "La Prieta Casada" (Doc. No. 104, PP. 2-3).[4]  However, evidence and testimony produced throughout this case explain any discrepancies or confusion perceived due to the multiple copyrights.

- Sanchez does not read, write, or speak English.[5]  Therefore, he asked his acquaintance, Johnny Herrera, to help him file a copyright registration for "La Prieta Casada."[6]  In 1976, Herrera filed a copyright registration for "La Prieta Casada" and identified Jedasa Publishing Company as the publisher and copyright owner (Doc. No. 31, Ex. B, PP. 3-4).  When Sanchez learned that Herrera identified himself as the copyright owner and Jedasa as the publisher, Sanchez filed suit against him.[7]  The

---

[3] Sanchez incorporates by cited reference, as if fully set forth herein, the evidence, authority, and arguments cited in Plaintiff's Memorandum to the Court (Doc. No. 105).

[4] The copyrights referenced by the Court are attached to Plaintiff's Response to Motion for Summary Judgment as Exhibit B (Doc. No. 31).

[5] Doc. 77-2, July 30, 2012, Deposition of Adan Sanchez at 11:5-11:18

[6] *Id.* at 23:5-23:19

[7] *Id.* at 23:25-25:7

  suit was not resolved in Court.[8] However, Leonardo Quiroz, the current owner of Jedasa, testified that Sanchez and Herrera agreed outside of Court that Sanchez owns all rights and interests in and to "La Prieta Casada," and that Hacienda knew about the agreement.[9] Quiroz testified that Jedasa relinquished any and all claims to "La Prieta Casada."[10] Quiroz further testified that he believes Sanchez owns "La Prieta Casada."[11]

- Sanchez and San Antonio Music Publisher (SAMP) had an agreement where SAMP collected royalties on behalf of Sanchez in the United States and Mexico.[12] In 1984, San Antonio Music Publisher ("SAMP") filed a copyright registration for "La Prieta Casada" (Doc. No. 31, Ex. B, PP. 6-7). SAMP filed the copyright registration to protect its rights from Jedasa's competing copyright.[13] The administration relationship between Sanchez and SAMP ended in 1991.[14] Javier Gutierrez, president of SAMP, testified that SAMP has no ownership interest in "La Prieta Casada."[15] Gutierrez also testified that he believes Sanchez owns "La Prieta Casada."[16]

- In1994, Sanchez filed a copyright for "La Prieta Casada." (Doc. No. 31, Ex. B, PP. 8-9). In 2004, he filed a copyright renewal for "La Prieta Casada" (Doc. No. 31, Ex. B, PP. 10-11).

12. All of the various copyrights identify Sanchez as the author of "La Prieta Casada," and the evidence and testimony offered throughout this case make clear that Sanchez is the owner of "La Prieta Casada." However, the Court's Memorandum and Opinion (Doc. No. 104), akin to and

---

[8] *Id.* at 24:10-13

[9] Doc. No. 83-6; September 5, 2013, Deposition of Leonardo Quiroz at 12:19-14:19

[10] *Id.* at 146:18-148:1

[11] *Id.* at 144:16-145:6

[12] Doc. No. 83-3; September 11, 2013, Deposition of Javier Gutierrez at 10:2-11:11

[13] *Id.* at 42:2-42:11

[14] *Id.* at 10:9-10:11

[15] *Id.* at 23:23-24:3

[16] *Id.* at 24:8-24:12

written in the vein of a final judgment, expresses doubt over Sanchez's ownership status.

13. Sanchez believes that the Memorandum and Opinion opens a Pandora's Box for future infringers and gives them free reign to exploit "La Prieta Casada" and later claim ignorance or confusion over ownership. Therefore, Sanchez respectfully requests that the Court issue a declaration with respect to the ownership of "La Prieta Casada" and all rights appurtenant thereto. Sanchez made a request for declaratory judgment on this and other matters in his First Amended Complaint (Doc. No. 16, P. 13, ¶¶ 31-32).

### B. Defendants' Alleged Repudiation

14. Sanchez's 1994 copyright registration and 2004 registration renewal, along with the others, were public information available to Defendants. There is nothing about these registrations that gives Defendants or anyone else the right to continuously infringe on protected intellectual properties, such as "La Prieta Casada." Defendants know they do not have a license from Sanchez for the use and exploitation of "La Prieta Casada," yet they knowingly and intentionally produced, manufactured, and distributed products that embodied it. Defendants did not pay Sanchez and money or royalties for these exploitations. Further, Defendants did not pay Jedasa any money or royalties for these exploitations since at least 2005 [17] – although they now claim that they determined that Jedasa was the owner of "La Prieta Casada."

15. Defendants were not party to the 1995 suit or any post-litigation agreements between Sanchez and Jedasa.[18] Defendants cannot repudiate ownership of a party's copyrighted work just because they "say so," and then proceed to infringe on that work without repercussion. Sanchez

---

[17] Doc. No. 83-6; September 5, 2013, Deposition of Leonardo Quiroz at 25:12-25:21.

[18] *Sanchez v. Herrera*; Case No. 2:95-cv-00245

disputes receiving the May 4, 1995, letter that the Court terms a repudiation[19]; and Defendants have no proof that it was received by anyone on Sanchez's behalf. The owner of Jedasa, Leonardo Quiroz, testified under oath that Defendants never came to Jedasa to review Jedasa's files [20] – contrary to representations Defendants made in the May 1995 letter. It is clear that Defendants made false and fraudulent representations to avoid consequences for their infringing behaviors. Yet, the Court takes their representations at face value.

16. In addition, while the Memorandum and Opinion (Doc. No. 104) makes numerous findings of fact, the Court does not analyze whether the documents referred to, including the May 4, 1995, letter Defendants claim they sent, related to administration, publishing or ownership of "La Prieta Casada." These are all very distinct rights that require separate analysis. Therefore, Sanchez respectfully requests that the Court amend its Memorandum and Opinion to state which rights Defendants allegedly repudiated, and which rights it believes Sanchez retains with respect to "La Prieta Casada." If the Court determines that Sanchez maintains any rights in and to his copyrighted work, "La Prieta Casada," then Sanchez requests that it allow him to proceed with his copyright infringement claim against Defendants.

### C. Right to Pursue Infringement Actions

17. The language utilized in the Memorandum and Opinion essentially voided Sanchez's copyright in "La Prieta Casada" and stripped him of all rights and benefits associated with a copyright.[21] The Memorandum and Opinion states, "the summary judgment evidence establishes

---

[19] Doc. No. 28, Exhibit I

[20] *Id.* at 15:21-16:4

[21] Unfortunately, the Court did not analyze the distinction between administration, publishing or ownership.

that an ownership dispute concerning 'La Prieta Casada' has existed since at least 1995, meaning that Sanchez's copyright claims accrued in 1995 and the limitations period expired in 1998." (Doc. No. 104, P. 13). This language suggests that any infringer from 1998 onward has a free license to exploit "La Prieta Casada" without repercussion– even if they were not party to the lawsuit between Sanchez and Herrera.[22] Hacienda Records, L.P. didn't even exist in 1995 so it could not have "repudiated" anything.[23] How could Sanchez be barred from availing himself of the protection of the U.S. Copyright Act by actions of Hacienda Records, L.P. due to a "repudiation" it could not make for infringements that had not yet occurred?

18. The Court's decision has a significant impact on Sanchez's ownership rights and ability to protect his intellectual property. Defendants in a separate copyright infringement case have already filed a notice of the Memorandum and Opinion (Doc. No. 104), citing the Court's decision in an attempt to avoid liability for their unauthorized infringement of "La Prieta Casada."[24] As in this case, those Defendants were not party to or involved in any way in the dispute between Sanchez and Herrera. Yet, they are using this Court's decision to argue that Sanchez's claim is time-barred.

19. Sanchez respectfully disagrees with the Court's decision and believes it goes beyond the scope and intention of the Court in the *Seven Arts* case. The language in the Memorandum and Opinion also disregards the limitations period set forth in the United States Copyright Act, which provides a three year rolling statute of limitations that starts over for each new infringement. 17

---

[22] Doc. No. 104, P. 16, FN 5

[23] Rick Garcia testified under oath that Hacienda Records L.P. was formed in 1999. Doc. No. 31-1; July 12, 2012, Deposition of Rick Garcia at 10:13-10:16.

[24] See Doc. No. 237 and Doc. No. 237 in *Guajardo et al. v. Freddie Records, Inc., et al.*; Case No. 4:10-cv-2024; United States District Court, Southern District of Texas, Houston Division.

U.S.C § 507(b). However, since the Court utilized this language, Sanchez requests that it enter a declaratory judgment clarifying the status of his copyright for "La Prieta Casada" and any value it may retain– including the right to take action against past and future infringers.

### D. The Court's Determination of Multiple Issues of Fact Was Error

20.     The Court's Memorandum and Opinion (Doc. No. 104) used 18 pages to make numerous findings of fact on disputed issues controverted by competent summary judgment evidence.  The result is that Sanchez is left with no remedy or relief for his copyright infringement claims, and Defendants, the infringers, are allowed to perpetuate their improper conduct.  The Court's ruling penalizes parties who diligently try to protect their intellectual property.  It encourages infringers, such as Defendants, to create confusion and use deceitful tactics in situations such as this– where the creator of intellectual property is unsophisticated, gullible, and illiterate.

21.     When a defendant moves for summary judgment on an affirmative defense, such as the statute-of-limitations defenses employed in this case, the defendant must conclusively prove each element of its defense as a matter of law, leaving no issues of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51 (1986); see also *San Pedro v. United States*, 79 F.3d 1065, 1068 (11th Cir. 1996).  A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. *Sossaman v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted).  In determining whether there is a genuine dispute of material fact that prevents summary judgment, a court must consider all evidence in the light most favorable to the nonmovant. *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1236-37 (10th Cir. 2002).  The court must also resolve all reasonable doubts about the facts in favor of the nonmovant. *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 455-56 (5th Cir. 2005).

22.     This is a fact-intensive case, replete with contradicting testimony and red herring issues created by Defendants. In its Memorandum and Opinion (Doc. No. 104), the Court disregards competent opposing evidence, and makes findings of fact based entirely on Defendants' presentation of the evidence.

    **i)     The Various Copyrights Create a Conflict Regarding Ownership of "La Prieta Casada"**

23.     The Memorandum and Opinion makes the following factual findings:

- "'La Prieta Casada' has been the subject of multiple and inconsistent copyright registrations since 1976" (Doc. No. 104, P. 2).

- "As the multiple copyright registrations reflect, the ownership history of 'La Prieta Casada' makes identifying the owner difficult (*Id.* at P. 4).

- "Three copyright registrations between 1976 and 1994 show three different owners of 'La Prieta Casada's' copyright." (*Id.* at P. 13).

24.     As explained at length above, Sanchez disputes that the copyrights for "La Prieta Casada" are inconsistent.[25] Any issues of ownership created by the various copyrights have been resolved through course of dealings between the parties prior to this litigation. Both Jedasa and SAMP stated under oath that they do not have any rights or ownership interest in "La Prieta Casada," and that they believe Sanchez is the owner.[26] This testimony is supported by Sanchez's valid United States Copyright and registration renewal.[27] However, the Court ignores this sworn testimony and states as fact that the ownership of "La Prieta Casada" is in dispute.

---

[25] See ¶ 11 of this Motion to Alter or Amend

[26] Doc. No. 83-6; September 5, 2013, Deposition of Leonardo Quiroz at 144:16-145:6; and Doc. No. 83-3; September 11, 2013, Deposition of Javier Gutierrez at 24:8-24:12.

[27] Doc. No. 31, Ex. B, PP. 8-9 and Doc. No. 31, Ex. B, PP. 10-11

### ii)      Defendants' Repudiated Sanchez's Ownership of "La Prieta Casada" Through their May 4, 1995, Correspondence

25.   The Memorandum and Opinion makes the following factual findings with respect to Defendants' repudiation of Sanchez's ownership interest in "La Prieta Casada:"

- "Hacienda sent a letter on May 4, 1995 to the three parties who had registered a copyright for the song– Jedasa, San Antonio Music, and Sanchez (Docket Entry No. 28, Ex. I at 1).

- The letter was also sent to Sanchez's attorney" (Doc. No. 104, P. 14). "Hacienda notified both Sanchez and his attorney that it was paying Jedasa royalties for mechanical to the song" (*Id.* at P. 15).

26.   The Memorandum and Opinion relies heavily on the May 4, 1995, letter that Defendants allegedly sent Sanchez and his former attorney.[28, 29] However, Sanchez disputes that he actually received or had knowledge of this letter, which is supported by his behavior. On December 13, 1994, Sanchez sent Hacienda a letter denying their request for a contract with his band, Los Tamaulipecos Hermanos Sanchez.[30] In his 1994 letter, which pre-dates Defendants' 1995 letter, Sanchez stated that entering an agreement with Defendants would infringe upon three different entities: Los Tamaulipecos, Adams Records, and AABS Music Publisher.[31] The letter further states, "When I told you I had no contract with anyone; I misunderstood the question, to mean with anyone but the family. Those in charge of the record company, refuse to part with any master which they

---

[28] The May 4, 1995, letter is Doc. No. 28, Exhibit I at 1

[29] Sanchez objects to the use of the May 4, 1995, letter as summary judgment evidence, as it constitutes inadmissible hearsay, offered to prove the truth of the matter asserted, and is in violation of Rule 802 of the Federal Rules of Evidence. *U.S. v. Cardascia*, 951 F.2d 474, 486-87 (2d Cir. 1991).

[30] Doc. No. 41-1

[31] *Id.*

have produced."[32]  Adams Records and AABS Music Publisher are Sanchez's family-owned businesses.[33]  The letter makes no mention of ownership interests in Sanchez's works held by either Jedasa or SAMP.

27.  Evidence shows that Sanchez was diligent in protecting the rights in and to his intellectual property.  This is consistent with his 1994 letter, with his suit against Johnny Herrera and Jedasa, and with this current litigation.  However, Defendants admit that "Hacienda never received a response to this letter from either Sanchez or his attorney."[34]  Further, Javier Gutierrez, president of SAMP, testified that Sanchez never contacted SAMP protesting the 1995 letter, which stated that Jedasa was his publisher.[35]  Failure to act with respect to the ownership of his musical compositions and intellectual property is out of character for Sanchez.  Throughout this case, Sanchez has stated that Jedasa is not his publisher, and never had permission to publish his songs, including "La Prieta Casada." [36]  It is unlikely that Sanchez would not have addressed this misstatement in the 1995 letter if, in fact, he ever received it.

28.  Leonardo Quiroz, the current owner of Jedasa, testified that he did not recall ever receiving the 1995 letter or any payments associated with it.[37]  Further, Rick Garcia testified that the

---

[32] *Id.*

[33] Doc. No. 41-5; July 30, 2012, Deposition of Adan Sanchez at 53:3-55:7

[34] Doc. No. 83, P. 5, ¶ 11

[35] Doc. No. 83-3; September 11, 2013, Deposition of Javier Gutierrez at 29:8-29:16 and 30:17-30:22.

[36] Doc. No. 31-11; Affidavit of Adan Sanchez at P. 2, ¶ 2 and ¶ 8

[37] Doc. No. 83-6; September 5, 2013, Deposition of Leonardo Quiroz at 68:2-68:11 and 0:18-70:25.

letter was not sent by certified mail and that he has no proof that Sanchez ever truly received it.[38] Despite this controverting evidence, the Court decided that Sanchez received the letter and makes the factual determination that it repudiated his ownership interest in and to his intellectual property.

### iii)   Sanchez's Copyright Infringement Claims Accrued in 1995

29.   The Court makes a factual determination about the date on which Sanchez first learned of Defendants' infringing activities and the accrual of his copyright infringement claim:

- "Sanchez's copyright claim against Hacienda accrued no later than May 4, 1995...At that point, Sanchez was aware of the facts that form the basis of this copyright action (Doc. No. 104, P. 15)"

30.   The Court failed to consider that Defendants used "La Prieta Casada" on multiple products that were produced, manufactured, and distributed over a period of twenty years or more. Each infringement has its own three-year limitations period. 17 U.S.C. 507(b); see also *Roger Miller Music, Inc.,* 477 F. 3d at 391.  A claim for copyright infringement can accrue more than once because each infringement is a distinct harm. See *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004).  Each new infringing act causes a new three year statutory period to begin.  See *Ritchie v. Williams*, 395 F.3d 283, 288 n.5 (6th Cir. 2005).  Thus, any infringement of *La Prieta Casada* by the Hacienda Defendants that occurred on, after, or three years prior to the date the Original Complaint was filed falls within the limitations period.

31.   Defendants offered no evidence to show when Sanchez learned of each of their multiple instances of infringement– some of which occurred as recently as 2012.[39]  Further, Defendants did not "pull" products embodying "La Prieta Casada" from their retailers until after this

---

[38] Doc. No. 31-1; July 12, 2012, Deposition of Rick Garcia at 99:23-100:14

[39] Doc. No. 16-4 and Doc. No. 16-5

lawsuit was initiated, and as of July 12, 2012, had not "pulled" products from distributors.[40] As such, they continued to profit from their unauthorized use and exploitation of "La Prieta Casada" from sales made within the three years from the time suit was filed. However, contrary to the law, the Court made a factual determination that Sanchez learned of the infringing activities in 1995, and is therefore time-barred from bringing an infringement action. Hacienda Records, L.P. did not exist in 1995.[41]

### iv) The October 2011 Correspondence and Payment from Hacienda was Not a Concession of Sanchez's Ownership of "La Prieta Casada"

32. The Court made a factual determination as to the purpose and intent of Defendants' October 13, 2011, letter, sent in response to Sanchez's October 5, 2011, demand letter:

- "It is true that in October 2011, Hacienda sent Sanchez a check for royalties for its recent uses of 'La Prieta Casada,' but this was not a concession that Sanchez was the song's rightful copyright owner or that Hacienda was giving up any claim that it had to use the song" (Doc. No. 104, P. 17).

33. Sanchez's October 5, 2011, letter states that Sanchez is the owner and author of "La Prieta Casada," and requests an accounting and payments for Defendants' unauthorized exploitations of "La Prieta Casada."[42] In response, Defendants sent their October 13, 2011, letter that included a list of exploitations of "La Prieta Casada" and a check for $227.50 for such exploitations.[43] Rick Garcia stated in his deposition testimony that the October 13, 2011, letter was a "goodwill

---

[40] Doc. No. 31-1; July 12, 2012, Deposition of Rick Garcia at 159:7-17

[41] *Id.* at 10:13-10:16

[42] Doc. No. 31-6

[43] *Id.*

settlement" in response to Sanchez's demand.[44] It is unclear what Defendants' intentions were with respect to the October 2011 letter, and it is inappropriate for the Court to make such a presumption with the scant evidence on the record. Nevertheless, the Court makes a finding of fact that the letter was not a concession of Sanchez's ownership.

34. The findings of fact made by the Court throughout the Memorandum and Opinion (Doc. No. 104) are improper and a violation of Sanchez's Seventh Amendment rights. As such, Sanchez respectfully requests that the Court alter its opinion to omit these factual findings, which were issued without full consideration of the evidence on the record and in violation of Sanchez's rights.

## **CONCLUSION**

WHEREFORE, PREMISES CONSIDERED, Sanchez respectfully requests that the Court render an amended judgment that:

a) Declares that Sanchez is the copyright owner of his musical composition, "La Prieta Casada;"

b) Holds that Defendants did not repudiate Sanchez's ownership of "La Prieta Casada" or, in the alternative, failed to effectuate such repudiation to Sanchez;

c) Allows Sanchez to pursue infringement actions against persons and entities who knowingly and intentionally exploited "La Prieta Casada," including Defendants; and

d) Allows Sanchez to pursue his breach of contract or other claims.

Sanchez seeks such other and further relief to which he may show himself entitled.

---

[44] Doc. No. 31-1; July 12, 2012, Deposition of Rick Garcia at 160:15-23 and 162:8-162:10

Respectfully Submitted,

SHOWALTER LAW FIRM

By:  /s/ David Showalter
     David W. Showalter
     TBA# 18306500
     S.D. I.D. 5703

1117 FM 359, Suite 200
Richmond, Texas 77469
(281) 341-5577
(281) 762-6872 (FAX)

ATTORNEY FOR PLAINTIFF
ADAN SANCHEZ

## CERTIFICATE OF SERVICE

    I hereby certify that service of the foregoing was, on  23rd  day of September, 2014, automatically accomplished on all known Filing Users through the Notice of Electronic Filing which includes counsel of record.

        /s/ David W. Showalter
        DAVID W. SHOWALTER