IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ADAN SANCHEZ, | § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-11-3855 |
| HACIENDA RECORDS AND RECORDING STUDIO, INC., *et al.*, | § § § | |
| Defendants. | § § | |

**MEMORANDUM AND ORDER DENYING MOTION TO ALTER OR AMEND AND ORDERING ADDITIONAL RESPONSE ON ONE ISSUE**

Adan Sanchez sued Hacienda Records, L.P., Latin American Entertainment LLC, Annie Garcia, Roland Garcia, Sr., and Rick Garcia (together, "Hacienda"), for copyright infringement and related claims. Sanchez alleged that he owned the copyright to *La Prieta Casada*, a Tejano love song, and that Hacienda recorded and distributed it without his authorization. (Docket Entry No. 16). Hacienda did not dispute that it had recorded and distributed the song, but did dispute Sanchez's ownership and claimed that it acted with the rightful copyright owner's permission.

Although this litigation involves only one song and one copyright infringement claim, both counsel for Sanchez and counsel for Hacienda have more than the usual connections to their clients. Counsel for Sanchez, David Showalter, has not only an attorney's financial interest but also an owner's interest in the alleged copyrights his clients, including Sanchez, assert against Hacienda.[1] Counsel for Hacienda, Roland Garcia, Jr., is the son of Annie Garcia and Roland

---

[1] Until recently, Showalter held Adan Sanchez's rights in several songs, including *La Prieta Casada*, on Sanchez's behalf. (Docket Entry No. 3). On December 1, 2014, Showalter transferred those rights back to Sanchez "[t]o remove any questions or concerns related to Mr. Sanchez's standing or ability to protect his legal rights in and to his musical compositions."

1

Garcia, Sr., and the nephew of Rick Garcia, the founders, owners, directors, and officers of Hacienda Records and its general partner, Latin American Entertainment, LLC. This lawsuit is one of several disputes between Showalter and Hacienda.

This court denied Hacienda's first motion for summary judgment on its affirmative defenses after concluding that disputed facts remained. (Docket Entry No. 49). With the court's leave, Hacienda filed a second summary judgment motion on January 31, 2014, arguing that limitations barred Sanchez's suit. (Docket Entry No. 83). The court granted the motion and directed the parties to "file a statement identifying any issues that remain to be resolved or a proposed final judgment." (Docket Entry No. 104). Both parties responded. (Docket Entry Nos. 105, 106, 107, 108). Sanchez also moved under Federal Rule of Civil Procedure 59(e) to alter or amend this court's grant of summary judgment on the copyright-infringement claim, (Docket Entry No. 109), and Hacienda responded, (Docket Entry No. 110).

Based on the pleadings, the motion and response, the briefs, the record, and the applicable law, the court denies Sanchez's motion to alter or amend, (Docket Entry No. 109). The court resolves, and is prepared to enter final judgment on, all issues except Sanchez's breach-of-contract claim. That issue is not resolved in this Memorandum and Order out of an abundance of caution. Because Hacienda raised the issue in a memorandum filed after, rather than as part of, its summary judgment motion, the resolution is deferred to ensure that Sanchez has had a full opportunity to respond. By **January 15, 2015**, Sanchez must file any additional response to the arguments Hacienda raises for prevailing on Sanchez's breach of contract claim, (Docket Entry No. 108). The response may not exceed five pages, given the extensive briefing Sanchez has already submitted.

The reasons for these rulings are explained below.

## I. Factual and Procedural Background[2]

Hacienda is an independent music-recording studio in Corpus Christi, Texas. The studio opened in 1979, specializing in Tejano music for a predominately Mexican-American audience. It is a family-run business, owned and operated by Annie Garcia, her husband Roland, Sr., and Roland Sr.'s brother, Rick. (*See* Docket Entry No. 28, Ex. M ¶¶ 1–2).

Adan Sanchez, the plaintiff, is a Tejano musician. He has a grade-school education and cannot read, write, or speak English. (Docket Entry No. 41, Ex. E at 11–13, 42). He claims that he composed *La Prieta Casada* in the 1970s. (*Id.* at 114). Many artists over the years have recorded *La Prieta Casada*. Hacienda recorded and distributed some of these recordings. (*E.g.*, Docket Entry No. 28, Ex. I).

*La Prieta Casada* has been the subject of multiple and inconsistent copyright registrations since 1976. A 1976 copyright registration shows Sanchez as *La Prieta Casada*'s author. This 1976 registration identifies the publisher and copyright holder as Jedasa Publishing Co. and its then-owner, Johnny Herrera. (Docket Entry No. 41, Ex. U at 19; Docket Entry No. 31, Ex. B at 3). Jedasa is a music publisher initially owned by Johnny Herrera and later by Leonardo Quiroz. Another copyright registration, from 1984, shows San Antonio Music Publishers[3] as the copyright owner. (Docket Entry No. 41, Ex. N at 1; Docket Entry No. 31, Ex. B at 6). A notarized 1990 document bearing what purports to be Sanchez's signature states that he acknowledges Herrera as the sole publisher and copyright holder of *La Prieta Casada*. (Docket Entry No. 41, Ex. K). Yet another copyright registration from 1994 shows Sanchez as the copyright owner. (Docket Entry No. 31, Ex. B at 8). A 2004 registration renewal lists Adan

---

[2] The factual background is set out in the February 11, 2013 Memorandum and Opinion, (Docket Entry No. 49), and is only briefly summarized below.

[3] San Antonio Music's relationship to Hacienda, Jedasa, and Sanchez is unclear.

3

Sanchez as the renewal copyright claimant and Jedasa as the original copyright owner. (*Id.*, Ex. at 10).

Herrera died in 2003, and Leonardo Quiroz took over Jedasa. (Docket Entry No. 28, Ex. M ¶ 12). In 2010, Quiroz, acting on Jedasa's behalf, assigned Sanchez any interest Jedasa might have in various songs, including *La Prieta Casada*. The assignment agreement stated:

> This assignment also includes and covers any and all claims, damages and causes of action by or against any party which in any way relate to or arise from the [songs], as well as the right to file suit, make claims and settle same on any terms Assignee deems advisable.

(Docket Entry No. 28, Ex. K at 1). The agreement was backdated to 2000. (*Id.*). Sanchez paid Jedasa $5,000.00. (*Id.*, Ex. K at 5).

In October 2011, David Showalter, by then Sanchez's attorney, wrote Hacienda a letter demanding that it immediately stop unlicensed uses of all the songs that the assignment agreement covered, including *La Prieta Casada*. (Docket Entry No. 28, Ex. J). The letter also demanded that Hacienda account to Sanchez for royalties for unlicensed uses and purported to revoke any previous permission that may have been given to use the song.

Hacienda responded to Showalter's letter. (Docket Entry No. 28, Ex. L at 2). The response admitted that Hacienda had produced recordings of *La Prieta Casada*, but disputed Sanchez's copyright ownership. Hacienda cited various music-industry sources it described as listing people other than Sanchez as the song's creator and copyright owner. Hacienda pointed to the website of the "Sociedad De Autores y Compositores de Mexico" showing Juan Villareal as the composer of *La Prieta Casada*. The website also features other artists crediting Villareal as the song's composer. (*Id.*). Hacienda nevertheless sent Sanchez a check for $227.50 for its

recent uses of *La Prieta Casada*, "in a spirit of good will, time efficiency and an effort to do the right thing." (*Id.*). This lawsuit followed.

Sanchez sued Hacienda and various other defendants for copyright infringement, breach of contract, fraud, and fraudulent misrepresentation. (Docket Entry No. 16). He sought a declaratory judgment that he is the exclusive owner of all rights to *La Prieta Casada*, that the defendants were not entitled to possess or use the song, and that he was entitled to an accounting for all revenue and profits from the defendants' use of the song. (*Id.* at 13). The defendants moved to dismiss. (Docket Entry No. 18). On May 11, 2012, the court granted the motion to dismiss Sanchez's fraud claims, with prejudice and without leave to amend. (Docket Entry No. 19). The court converted the remainder of the motion to dismiss to a motion for summary judgment. (*Id.*). After targeted discovery, Hacienda moved for summary judgment on its affirmative defenses of license, waiver, and estoppel, arguing that Sanchez's copyright-infringement claim failed because Hacienda had express or implied licenses to use *La Prieta Casada*. Sanchez responded that no such licenses existed and that Hacienda lacked any authorization, express or implied, to use his song. (Docket Entry No. 31). The court denied Hacienda's motion for summary judgment, finding factual disputes material to resolving Hacienda's affirmative defenses. (Docket Entry No. 49).

After further discovery, Hacienda again moved for summary judgment, now arguing that Sanchez's copyright-infringement claim was time-barred because his underlying ownership claim was time-barred. (Docket Entry No. 83); *see also Seven Arts Filmed Entertainment Ltd. v. Content Media Corp., PLC*, 733 F.3d 1251, 1255 (9th Cir. 2013) (following the rule adopted in other circuits that "where the gravamen of a copyright infringement suit is ownership, and a freestanding ownership claim would be time-barred, any infringement claims are also barred.").

This court granted Hacienda's motion for summary judgment. (Docket Entry No. 104).

The court first summarized the complicated ownership history of *La Prieta Casada*:

> As the multiple copyright registrations reflect, the ownership history of *La Prieta Casada* makes identifying the owner difficult. This is the second lawsuit involving this song. In June 1995, Sanchez sued Herrera and Jedasa in the United States District Court for the Southern District of Texas, Corpus Christi Division, alleging that Herrera did not own the rights to *La Prieta Casada* and was not authorized to register the copyright on behalf of himself or Jedasa. (*See* Docket Entry No. 41, Ex. B, *Sanchez v. Herrera*, No. 2:95-cv-00245, Joint Pretrial Order). That lawsuit settled before trial or dispositive ruling. The settlement terms are unclear. In one document purporting to be a settlement agreement, Herrera and Sanchez agreed to an equal division of any royalties from *La Prieta Casada*. (*Id.*, Ex. E-7 at 4). This "Wrap Around Agreement" included a provision that Herrera would "remove his name as author of the Song, 'La Prieta Casada,' at the BMI registry," and that Herrera and Sanchez would "execute whatever documents [are] necessary in order to perfect filings or clarify their 50/50 ownership of the songs [sic] proceeds to third parties." (*Id.*). This agreement shows Herrera's signature, but the signature line for Sanchez is blank. (*Id.*).
>
> In his deposition in the present lawsuit, Sanchez tried to explain *La Prieta Casada*'s ownership history. As he apparently did in the 1995 lawsuit, Sanchez took the position that Herrera had tricked or misled him into allowing the 1976 copyright to be registered in Herrera's name. (*See id.*, Ex. E, at 27–29). Sanchez thought that the 1984 registration by San Antonio Music was a formality needed only to collect some song royalties in Mexico. (*Id.* at 143–45). Sanchez denied having authorized San Antonio Music to file a copyright in its name for *La Prieta Casada*. (*Id.* at 30). Sanchez recalled having seen the 1990 document that purported to recognize Herrera's exclusive rights to *La Prieta Casada*. According to Sanchez, Herrera had prepared the document but Sanchez had refused to sign it. Although the document bears what purports to be his signature, Sanchez testified that the signature was not his. (*Id.* at 87–104). The document is, however, notarized, and the notary submitted an affidavit stating that the signature was executed by a person claiming to be Adan Sanchez and carrying photo identification. (*Id.*, Ex. L).
>
> Sanchez testified in his deposition that the 1994 registration was an attempt to end the dispute and establish, once and for all, that he owned the *La Prieta Casada* copyright. (*See* Docket Entry No. 41, Ex. E at 149–53, 161–62). He denied agreeing to divide ownership of certain songs with Jedasa to settle the 1995 lawsuit. (*Id.*, Ex. E at 107–08). Sanchez also denied that the 2010 agreement showed that Quiroz, Herrera, or Jedasa ever had an ownership interest in *La Prieta Casada*. Rather, Sanchez testified that he had always been the true copyright owner and the agreement merely showed that Jedasa was abandoning

> any contrary claims. (*Id.*, Ex. E at 163–64). Sanchez did not know or explain why the agreement was backdated to 2000. (*Id.*, Ex. E at 123–24).

(Docket Entry No. 104, at 4-5).

After reviewing the song's ownership history, the court concluded that "[t]he summary judgment evidence establishes that an ownership dispute concerning *La Prieta Casada* has existed since at least 1995, meaning that Sanchez's copyright claims accrued in 1995 and the limitations period expired in 1998." (Docket Entry No. 104, at 13):

> Questions about the song's copyright ownership resulted in the 1995 lawsuit Sanchez filed. Hacienda had sent a letter on May 4, 1995 to the three parties who had registered a copyright for the song—Jedasa, San Antonio Music, and Sanchez. (Docket Entry No. 28, Ex. I at 1). The letter was also sent to Sanchez's attorney. In this letter, Hacienda stated that it would pay Jedasa royalties for mechanical licenses to *La Prieta Casada*.[4] (*Id.*). On September 20, 1996, Hacienda sent Jedasa a check for $1,050.55 for Hacienda's use of *La Prieta Casada* between January 1, 1995 and January 31, 1996. (*Id.*, Ex. I at 2, 5). There is no evidence in the record suggesting that Jedasa did not acknowledge or accept the check.
>
> Hacienda's announced payment of royalties to Jedasa instead of Sanchez openly and expressly repudiated any ownership claim Sanchez asserted in *La Prieta Casada*.
>
> . . . .
>
> Hacienda . . . sold the song that Sanchez purported to hold the copyright to without paying him royalties. Hacienda notified both Sanchez and his attorney that it was paying Jedasa royalties for mechanical licenses to the song. Hacienda paid Jedasa royalties under mechanical licenses even though Hacienda was aware that Sanchez had claimed at least once that he owned the song and registered a copyright for it. Hacienda told Sanchez and his lawyer in writing what it was doing. Hacienda's conduct repudiated Sanchez's copyright ownership in *La Prieta Casada*, and recognized Jedasa's ownership. The fact that Hacienda was not a coowner of the copyright is a distinction without a difference.

---

[4] Under 17 U.S.C. § 115, a song's words and music that has been reproduced in phonorecords with the permission of the copyright owner may be reproduced in phonorecords by another person, if that person notifies the copyright owner and pays a royalty fixed by law. *EMI Entm't World, Inc. v. Karen Records, Inc.*, 603 F. Supp. 2d 759, 762 (S.D.N.Y. 2009) *amended on reconsideration in part*, 681 F. Supp. 2d 470 (S.D.N.Y. 2010). The right to reproduce is called a "mechanical license." *See id.*

7

> Sanchez cannot claim that he was unaware that Hacienda was distributing *La Prieta Casada*. He testified in his deposition that in 1995 he bought Albert Zamora's CD containing *La Prieta Casada*, which Hacienda had released; Sanchez testified that he knew that Hacienda had recorded the song. (Docket Entry No. 41, Ex. E at 65, 70). Sanchez also testified that he asked Roland Garcia Sr., the CEO of Hacienda, about royalty payments for the song. According to Sanchez, Garcia said that Hacienda "do[es] not pay royalties to anyone." (*Id.*, Ex. E at 65, 135).
>
> Sanchez's copyright claim against Hacienda accrued no later than May 4, 1995, the date Hacienda sent the letter to Jedasa, San Antonio Music, and Sanchez stating that it would pay royalties to Jedasa and not Sanchez. At that point, Sanchez was aware of the facts that form the basis of this copyright action. Indeed, on June 1, 1995, less than one month after Hacienda's letter, Sanchez sued Herrera and Jedasa in federal district court alleging copyright ownership to *La Prieta Casada* and seeking infringement damages. In that lawsuit, Herrera's answer stated that San Antonio Music and others had made ownership claims, and that Jedasa had obtained a report from Hacienda about its recordings of the song. (Docket Entry No. 41, Ex. D at 2). This filing is further evidence that Sanchez was on notice that Hacienda was recording and distributing *La Prieta Casada*. Because the ownership-based copyright claim accrued in May 1995, the three-year limitations period ended in May 1998, over a decade before Sanchez filed the present suit. *See* 17 U.S.C. § 507(b). Limitations bars Sanchez's suit.

(Docket Entry No. 104, at 14-16) (footnote omitted).

After concluding that Sanchez's infringement and ownership claims were time-barred, the court directed the parties to "file a statement identifying any issues that remain to be resolved or a proposed final judgment." (Docket Entry No. 104, at 18). Sanchez filed a brief in which he argued that the court still needed to resolve his breach-of-contract claim, his fraud claims, and his ownership interest in *La Prieta Casada*. (Docket Entry No. 105). Hacienda responded, contending that the court should enter final judgment. (Docket Entry No. 106, 108). Sanchez also moved to alter or amend the court's grant of summary judgment under Rule 59(e). (Docket Entry No. 109). Hacienda opposed this motion. (Docket Entry No. 110).

## II. Analysis

### A. Sanchez's Motion to Alter or Amend the August 26, 2014 Memorandum and Opinion Granting Summary Judgment

Sanchez timely moved under Federal Rule of Civil Procedure 59(e) to alter or amend this court's decision that his copyright infringement claim is time-barred. (Docket Entry No. 109). A Rule 59(e) motion "calls into question the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (citing *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). "A motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). "'Manifest error' is one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'" *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004)). The Fifth Circuit cautions that altering, amending, or reconsidering an order or judgment under Rule 59(e) is an extraordinary remedy that courts should use sparingly. *Templet*, 367 F.3d at 479; *see also* 11 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2810.1, at 124 (2d ed. 1995). The Rule 59(e) standard "favors denial of motions to alter or amend a judgment." *S. Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

Sanchez argues that this court's August 26, 2014 Memorandum and Opinion: (1) resolved factual disputes in Hacienda's favor; and (2) misapplied the law in determining the timeliness of his copyright infringement claim. Neither argument has merit, particularly in the context of a Rule 59(e) motion.

    **1.**     **The Argument that this Court Improperly Resolved Factual Disputes**

Sanchez identifies two factual disputes that he believes the court improperly resolved in Hacienda's favor: (a) whether La Prieta Casada's ownership was disputed as early as 1995; and (b) whether Hacienda repudiated Sanchez's ownership in 1995.[5]

As to the first asserted factual dispute, Sanchez emphasizes testimony in the record suggesting that Jedasa and San Antonio Music Publisher ("SAMP") no longer assert an ownership interest in *La Prieta Casada* and believe that Sanchez is the current owner. Sanchez contends that there is therefore no ownership dispute that could have triggered the statute of limitations on his infringement claim. Sanchez's argument, however, ignores the fact that regardless of the current positions Jedasa and SAMP have taken on the song's ownership, the record is clear that there was an ownership dispute between Sanchez on the one hand and Jedasa and SAMP on the other as early as 1995, when Sanchez sued them. Despite Sanchez's general assertions to the contrary, it is clear that the song's ownership history was confused and disputed as early as 1995, when Jedasa, SAMP, and Sanchez each claimed ownership, there were several copyright registrations in various names, and Sanchez sued Jedasa and its owner, Herrera, to determine ownership.

As to the second asserted factual dispute, Sanchez argues that the court resolved facts in favor of Hacienda, the movant, in concluding that Hacienda repudiated Sanchez's copyright ownership in a May 4, 1995 letter. Hacienda sent that letter to the three parties who had registered a copyright for *La Prieta Casada*—Jedasa, SAMP, and Sanchez. (Docket Entry No. 28, Ex. I at 1). Although Sanchez claims he never received this letter, it is undisputed that

---

[5] Sanchez identifies two other "Issues of Fact" that he contends this court resolved improperly: (1) whether "Sanchez's Copyright Infringement Claims Accrued in 1995" and (2) whether Hacienda conceded Sanchez's ownership in the parties' October 2011 correspondence. (Docket Entry No. 109, at 13-14). The first—when Sanchez's claim accrued—is a legal issue. While it turns on the two subsidiary factual issues addressed above—ownership dispute and repudiation—it is an issue of law, not fact. The second—whether Hacienda disputes that Sanchez *currently* owns the rights to *La Prieta Casada*—is not material to this court's conclusion that Sanchez's infringement claim accrued in 1995 and expired in 1998. That conclusion rested on this court's determination that undisputed summary judgment evidence showed an ownership dispute and repudiation as early as 1995.

Hacienda sent a copy of the letter to David Garcia, who Sanchez admits was his attorney at the time. (Docket Entry No. 41-25; 41-5 at 37 (Depo. at 140:20-141:01)). In the letter, Hacienda stated that it viewed Jedasa as the copyright's owner and would pay Jedasa royalties for certain licenses to the song. (*Id.*). Hacienda subsequently sent Jedasa a royalty check for using the song between January 1, 1995 and January 31, 1996. (*Id.*, Ex. I at 2, 5).[6] This court concluded that the undisputed evidence of "Hacienda's announced payment of royalties to Jedasa instead of Sanchez openly and expressly repudiated any ownership claim Sanchez asserted in *La Prieta Casada.*" (Docket Entry No. 104, at 14). Sanchez's arguments do not undermine this conclusion.

Sanchez argues that Quiroz, Jedasa's current owner, testified in his deposition that he never received Hacienda's letter or payments. But Quiroz did not own or run Jedasa in 1995. Sanchez also argues that Quiroz testified that to his knowledge, Hacienda did not come to Jedasa to scrutinize which copyrights it owned. Again, in 1995, Quiroz did not hold the position at Jedasa that he does now. He described himself as an "errand boy" in 1995, with little responsibility for, or awareness of, company matters. It was not until 2005, approximately a decade later, that Quiroz became Jedasa's owner. Quiroz testified that he had little to no knowledge of his predecessor's agreements or arrangements with Hacienda. (Docket Entry No. 89 at 3 (citing (Docket Entry No. 83-6 at 57:23-58:5; 150:20-151:1))).

Aside from the letter, other undisputed evidence this court considered and discussed in its opinion establishes as a matter of law that Sanchez was on notice of Hacienda's repudiation of

---

[6] Sanchez also argues that the letter was inadmissible hearsay. But Hacienda did not offer the letter to prove the truth of the matter asserted—that it believed Jedasa to be the song's owner and therefore would send future royalty payments to Jedasa. Instead, Hacienda offered the letter to prove its effect on the recipients, including Sanchez and his attorney, David Garcia: putting them on notice of Hacienda's repudiation of Sanchez's copyright. In any event, Sanchez never objected to the letter's admission as hearsay during the summary judgment briefing; considering it for the limited purpose is not plainly erroneous; and the argument cannot be raised for the first time in this Rule 59(e) motion.

11

his copyright well before he brought this infringement suit. Sanchez testified in his deposition that in 1995, he bought a CD containing a Hacienda-released version of *La Prieta Casada*. (Docket Entry No. 41, Ex. E at 65, 70). Sanchez testified that when he asked Hacienda's CEO about royalty payments for the song, he was rebuffed. (*Id.*, Ex. E at 65, 135). Courts view open selling of recordings without paying the asserted copyright owner as a "plain and express repudiation" of the asserted copyright ownership. *See, e.g., Santa-Rosa v. Combo Records*, 471 F.3d 224, 228 (1st Cir. 2006) ("[W]e cannot think of a more plain and express repudiation of co-ownership than the fact that Combo openly, and quite notoriously, sold Santa Rosa's records without providing payment to him.").[7] Moreover, in June 1995, Sanchez sued Jedasa and its then-owner, Herrera, in federal district court in Corpus Christi, alleging copyright ownership to the song and seeking infringement damages. Although Hacienda was not a party to that lawsuit, Herrera's answer stated that San Antonio Music "and others" had claimed copyright ownership and that Jedasa had obtained a report from Hacienda about its recording of the song. (Docket Entry No. 41, Ex. D at 2). This court reasoned that "Sanchez was on notice that Hacienda was recording and distributing *La Prieta Casada*" in 1995 and "the three-year limitations period ended in May 1998, over a decade before Sanchez filed the present suit." (Docket Entry No. 104, at 16 (citing 17 U.S.C. § 507(b)). Nothing in Sanchez's motion to alter or amend changes this conclusion.

Sanchez has failed to submit or identify competent record evidence creating a genuine factual dispute material to deciding the issues he identified as one basis for his motion to alter or amend. He is not entitled to the relief he seeks on this ground.

---

[7] Sanchez argues that because Hacienda Records L.P. "did not exist in 1995," (Docket Entry No. 109, at 14), he could not have had notice that the defendants repudiated his ownership interest in *La Prieta Casada* in 1995. As Hacienda observes, this new argument may not be advanced under Rule 59(e). In any event, there is no dispute that Hacienda Records & Recording Studio, Inc. and Hacienda Records L.P. are related parties and that both have been owned and operated by the same family under the same general name for years.

### 2. Sanchez's Argument that this Court Misapplied the Law

Sanchez also contends that the court "disregards the limitations period set forth in the United States Copyright Act" and went "beyond the scope and intention of the Court in the *Seven Arts* case." (Docket Entry No. 109, at 8). His arguments either reiterate those he raised in his summary judgment briefing, which this court previously addressed, or assert arguments that could have been, but were not, raised at that time.

As an initial matter, this court did not disregard the Copyright Act's limitations period. To the contrary, the court recognized that in the "ordinary infringement case" in which "ownership is not in dispute," "each act of infringement gives rise to an independent claim, and the defendant is only liable for his acts of infringement committed within three years prior to plaintiff's lawsuit." (Docket Entry No. 104, at 9 (quotations and alterations omitted)). But when, as here, the "gravamen of a copyright infringement suit is ownership, and a freestanding ownership claim would be time-barred, any infringement claims are also barred." (*Id.* at 10 (quoting *Seven Arts*, 733 F.3d at 1255)).

Second, the court previously concluded that whether Hacienda was a coowner or a party to the lawsuit between Sanchez and Jedasa is a "distinction without a difference" and does not provide a basis to distinguish *Seven Arts*. (Docket Entry No. 104, at 15, 16 n.5). In that case, the defendant, Paramount Pictures, was not a party to the underlying ownership dispute between Seven Arts, CanWest, and Content, but it had an interest in the resolution of the ownership dispute, was not an "unknown third party," and "plainly and expressly" repudiated the plaintiff's copyright more than three years before the infringement suit. *Seven Arts*, 733 F.3d at 1254, 1257. Because this repudiation triggered the three-year statute of limitations, the court held that

13

the infringement suit based on the disputed ownership claim was untimely. *See id.* at 1257-58. Like Paramount, Hacienda was not an unknown third party to Sanchez or Jedasa. Just as the plaintiff in *Seven Arts* could not claim ignorance about the defendant's interest in the disputed work, Sanchez "cannot claim ignorance about [Hacienda's] interest in, and distribution of, [*La Prieta Casada*]." *Id.* at 1257.

Sanchez also argues that the August 2014 Memorandum and Opinion failed to consider any publication or administration rights—in addition to ownership rights—that he might have in *La Prieta Casada*. But Sanchez has not claimed publication or administration rights. The only basis for Sanchez's infringement and related causes of action is his claim to copyright ownership. The only issue has been ownership. Sanchez's complaint alleged that he owned the song and that Hacienda's use of the song infringed this ownership right. He sought a declaratory judgment that he owned the song. (Docket Entry No. 16, at 13). He claimed that because he owns the copyright, Hacienda infringed by recording and distributing the song without his permission. Because his freestanding ownership claim against Hacienda would be time-barred, his infringement claims are also barred. "[W]here the gravamen of a copyright infringement suit is ownership, and a freestanding ownership claim would be time-barred, any infringement claims are also barred." *Seven Arts*, 733 F.3d at 1255.

Based on careful consideration of the parties' motions and responses, the briefs, the record, this court's Memorandum and Opinion dated August 26, 2014, and the applicable law, the court denies Sanchez's motion to alter or amend, (Docket Entry No. 109).

### B. Sanchez's Remaining Claims

Notwithstanding Sanchez's attempt to alter or amend this court's ruling on his infringement claim, he argues that the following claims have not been finally resolved and

should proceed to trial: (1) his breach-of-contract claim based on Hacienda's representation that it had a license to use *La Prieta Casada* and the entire Jedasa catalog; and (2) his fraud claims based on Hacienda's alleged falsification of records and failure to provide accurate royalty payments and an accounting for the use of *La Prieta Casada*.[8]

### 1. The Breach-of-Contract Claim

Sanchez argues that his breach-of-contract claim, which he pleaded in the alternative, "is separate and distinct from the copyright infringement claim," and therefore remains in the case because it survived Hacienda's first motion for summary judgment and "was not even addressed" in the second. (Docket Entry No. 105, at 3). Sanchez bases this claim on Quiroz's 2010 assignment (backdated to 2000) of "all contracts, accounts, licenses, statements, documents and written or recorded agreements within his possession or control pertaining to the song *La Prieta Casada* and all the other works." (Docket Entry No. 41-9, at 20); (*see also id.* ("This assignment includes and covers any and all claims, damages and causes of action by or against any party which in any way relate to or arise from the Works. . . ."). He contends that this claim is still "alive, unresolved, and not subject to final judgment at this time." (Docket Entry No. 105, at 3).

In his motion to alter or amend the August 2014 Memorandum and Opinion, however, Sanchez admitted that there is no contract that Hacienda could have breached. "Defendants know they do not have a license from Sanchez for the use and exploitation of *La Prieta Casada*, yet they knowingly and intentionally produced, manufactured, and distributed products that embodied it." (Docket Entry No. 109, at 6). Sanchez has represented to the court that the

---

[8] Sanchez also asks this court to "issue a declaration with respect to the ownership of *La Prieta Casada* and all rights appurtenant thereto." (Docket Entry No. 105, at 8). As discussed above, however, this court has already concluded that Sanchez's infringement claim against Hacienda was time-barred because the ownership dispute over the song dates back to 1995 and Hacienda repudiated his ownership interest at that time. (Docket Entry No. 104). His claim for a declaratory judgment establishing ownership is time-barred.

15

"evidence is clear" that any licenses for the use of *La Prieta Casada* "**do not exist**." (Docket Entry No. 67, at 3 (emphasis in original)). Sanchez obtained a declaration from Quiroz, Jedasa's owner, affirming that "**no such license exists**." (Docket Entry No. 67 at 3 (emphasis original); *see also id.*, Ex. B ("No agreements were ever entered into with any studio, including Hacienda Records, which would grant a blanket license to use the musical compositions of Jedasa Publishing Co. There have never been any verbal or oral agreements granted to anybody, including Hacienda Records, to use musical compositions in the Jedasa Publishing Co. catalog."). In response to Hacienda's first motion for summary judgment on its affirmative defense of license, Sanchez did not argue that Hacienda had breached the license. Instead, Sanchez disclaimed the existence of any license agreement. (Docket Entry No. 31). Hacienda also raises several additional arguments on assignment and standing that may support summary judgment on the breach-of-contract claim. (Docket Entry No. 108).

Because Hacienda did not previously move for summary judgment on this claim,[9] the court orders Sanchez to respond by **January 15, 2015**, in no more than five pages, to the arguments raised in Hacienda's memorandum, (Docket Entry No. 108), for granting summary judgment dismissing the breach-of-contract claim.

### 2. The Fraud Claims

The court dismissed Sanchez's fraud claims with prejudice on May 11, 2012. (Docket Entry No. 19). His attempt to resuscitate them now, more than two years later, is untimely and, if granted, would be unduly prejudicial to Hacienda.

---

[9] Hacienda argues that its second motion was for "summary judgment, not a partial summary judgment." (Docket Entry No. 108 at 2). Hacienda acknowledged that there was a breach claim in the case and sought summary judgment on all the claims. But Hacienda's motion did not specifically urge the court to grant summary judgment on the breach-of-contract claim or explain why this claim should be dismissed on summary judgment. (Docket Entry No. 86).

16

Aside from the prior dismissal and delay in attempting to revive the fraud claims, they are also deficient as a matter of law. Sanchez asserts that in granting Hacienda's motion for summary judgment on the copyright-infringement claims, the court "gave a great deal of credence" to an October 13, 2011 letter from Hacienda to Sanchez. (Docket Entry No. 105, at 4). The Memorandum and Opinion granting summary judgment on the copyright-infringement claims described and quoted the letter, as follows:

> Hacienda . . . sent Sanchez a check in the amount of $227.50 for royalties for recent uses of *La Prieta Casada*, "in a spirt of good will, time efficiency and an effort to do the right thing."

(Docket Entry No. 104, at 4 (quoting letter)). Sanchez argues that because discovery led to evidence showing that "the royalties owed Sanchez far exceed $227.50," the defendants "falsely and fraudulently represented paltry sales of *La Prieta Casada* to Sanchez" in the October 13, 2011 letter. Sanchez asks the court to "reconsider dismissal" of his fraud claims. (Docket Entry No. 105, at 5).

While the court's Memorandum and Opinion summarily paraphrased the $227.50 check as payment "for royalties for recent uses" of the song, the letter itself made no such statement. To the contrary, in the letter, Hacienda clearly disputed Sanchez's claim of ownership that would entitle him to any royalties at all. (Docket Entry No. 28-12, at 3 ("Although our research leads us to believe that it is highly doubtful that Mr. Sanchez is the original composer of the song *Prieta Casada*, . . .")). The letter continued: "in a spirit of good will, time efficiency and an effort to do the right thing, we are enclosing a check in the amount of $227.50 for our recent use" of the song. The relevant part of the letter disclaimed any obligation to pay Sanchez for using the song. Hacienda nevertheless offered Sanchez $227.50 in what amounted to a settlement effort. (*Id.*). The letter did not state that Hacienda owed Sanchez this amount, or any amount at all.

And Sanchez neither alleged in his pleadings nor pointed to summary judgment evidence showing that he relied on any alleged misrepresentations by Hacienda, to his detriment. *See Italian Cowboy Partners v. Prudential Ins.*, 341 S.W.3d 323, 337 (Tex. 2011) (requiring, as two of the six elements needed to prevail on a fraud claim, both that "the plaintiff relied on the representation" and "the representation caused the plaintiff injury").

Moreover, Sanchez did not accept the settlement proposal and did not cash the check that Hacienda sent him. Instead, he sued Hacienda less than one month after the letter's October 13, 2011 date. His fraud claims, which this court already dismissed with prejudice, may not be renewed or proceed.

## IV. Conclusion

Sanchez's motion to alter or amend this court's Memorandum and Opinion dated August 26, 2014, (Docket Entry No. 109), is denied. His infringement claim, which depends on his untimely ownership claim, is time-barred. His fraud claims, which were dismissed with prejudice two years ago, cannot be resurrected now. The only remaining claim is for breach of contract. Resolution of Hacienda's argument that it is entitled to summary judgment dismissing that claim is deferred for a limited time, to ensure that Sanchez has a full opportunity to respond. By **January 15, 2015**, Sanchez must respond to Hacienda's arguments for summary judgment on this claim, (Docket Entry No. 108), in no more than five pages.

SIGNED on December 24, 2014, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

18