IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ADAN SANCHEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-11-3855 |
| | § | |
| HACIENDA RECORDS AND | § | |
| RECORDING STUDIO, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Adan Sanchez sued Hacienda Records, L.P., its general partner, Latin American Entertainment LLC, and its founders, owners, directors, and officers, Annie Garcia, Roland Garcia, Sr., and Rick Garcia (together, "Hacienda"). Sanchez alleged that he owned the copyright to a song, *La Prieta Casada*, which Hacienda recorded and distributed without his authorization. (Docket Entry No. 16). Sanchez asserted claims for copyright infringement, breach of contract, and fraud. Hacienda did not dispute that it had recorded and distributed the song, but did dispute Sanchez's ownership and claimed that it acted with the rightful copyright owner's permission.

Although this litigation involves only one song, both counsel for Sanchez and counsel for Hacienda have more than the usual connections to their clients. Counsel for Sanchez, David Showalter, has not only an attorney's financial interest but also an owner's interest in the alleged copyrights his clients, including Sanchez, assert against Hacienda. Until recently, Showalter held Adan Sanchez's rights in several songs, including *La Prieta Casada*. (Docket Entry No. 3). On December 1, 2014, Showalter transferred those rights back to Sanchez in an attempt "[t]o remove any questions or concerns related to Mr. Sanchez's standing or ability to protect his legal

rights in and to his musical compositions." (Docket Entry No. 112, Ex. A). Counsel for Hacienda, Roland Garcia, Jr., is the son of Annie Garcia and Roland Garcia, Sr., and the nephew of Rick Garcia, the founders, owners, directors, and officers of Hacienda Records and its general partner, Latin American Entertainment, LLC. This lawsuit is one of several disputes between Showalter and Hacienda.

The court dismissed Sanchez's fraud claim early in the litigation and later denied Hacienda's first motion for summary judgment on its affirmative defenses after concluding that disputed facts remained. (Docket Entry No. 49). With the court's leave, Hacienda filed a second summary judgment motion on January 31, 2014, arguing that limitations barred Sanchez's copyright infringement claim. (Docket Entry No. 83). Hacienda did not seek summary judgment on the breach-of-contract claim. The court granted Hacienda's motion on limitations and directed the parties to "file a statement identifying any issues that remain to be resolved or a proposed final judgment." (Docket Entry No. 104). Hacienda stated that only one issue remained, the amount of attorney's fees it is entitled to, and filed a proposed final judgment. (Docket Entry No. 106). Sanchez argued that his breach-of-contract claim, which he pleaded in the alternative, survived the court's grant of summary judgment on his copyright-infringement claim. (Docket Entry No. 105). Sanchez also moved under Federal Rule of Civil Procedure 59(e) to alter or amend the court's dismissal of the fraud claim and grant of summary judgment on the copyright-infringement claim, (Docket Entry No. 109). The court denied Sanchez's motion to alter or amend and directed Sanchez to "file an additional response to the arguments Hacienda raise[d] for prevailing on Sanchez's breach of contract claim." (Docket Entry No. 111, at 2). Hacienda filed a surreply, and Sanchez filed a supplemental response, (Docket Entry Nos. 112, 113). Based on the briefs, the pleadings, the record, and the applicable law, the court

concludes that Sanchez's breach-of-contract claim remains to be tried. A scheduling conference is set for **April 2, 2015** at 5:00 p.m. in Courtroom 11-B.

The reasons for this ruling are explained below.

## I.     Factual and Procedural Background

The factual background is set out in detail in the February 11, 2013 Memorandum and Opinion, (Docket Entry No. 49), and is briefly summarized below to provide context. Hacienda is an independent music-recording studio in Corpus Christi, Texas. The studio opened in 1979 and specialized in Tejano music for a predominately Mexican-American audience. It is a family-run business, owned and operated by Annie Garcia, her husband Roland, Sr., and Roland Sr.'s brother, Rick. (*See* Docket Entry No. 28, Ex. M ¶¶ 1–2).

Adan Sanchez, the plaintiff, is a Tejano musician. He has a grade-school education and cannot read, write, or speak English. (Docket Entry No. 41, Ex. E at 11–13, 42). He claims that he composed *La Prieta Casada* in the 1970s. (*Id.* at 114). Many artists over the years have recorded *La Prieta Casada*, and Hacienda recorded and distributed some of these recordings. (*E.g.*, Docket Entry No. 28, Ex. I).

*La Prieta Casada* has been the subject of multiple and inconsistent copyright registrations since 1976. A 1976 copyright registration shows Sanchez as *La Prieta Casada*'s author. This 1976 registration identifies the publisher and copyright holder as Jedasa Publishing Co. and its then-owner, Johnny Herrera. (Docket Entry No. 41, Ex. U at 19; Docket Entry No. 31, Ex. B at 3). Jedasa is a music publisher initially owned by Johnny Herrera and later by Leonardo Quiroz. Another copyright registration, from 1984, shows San Antonio Music Publishers[1] as the copyright owner. (Docket Entry No. 41, Ex. N at 1; Docket Entry No. 31, Ex. B at 6). A notarized 1990 document bearing what purports to be Sanchez's signature states that

---

[1]   San Antonio Music's relationship to Hacienda, Jedasa, and Sanchez is unclear.

he acknowledges Herrera as the sole publisher and copyright holder of *La Prieta Casada*. (Docket Entry No. 41, Ex. K). Yet another copyright registration from 1994 shows Sanchez as the copyright owner. (Docket Entry No. 31, Ex. B at 8). A 2004 registration renewal lists Adan Sanchez as the renewal copyright claimant and Jedasa as the original copyright owner. (*Id.*, Ex. at 10).

Herrera died in 2003, and Leonardo Quiroz took over Jedasa. (Docket Entry No. 28, Ex. M ¶ 12). In 2010, Quiroz, acting on Jedasa's behalf, assigned Sanchez any interest Jedasa might have in various songs, including *La Prieta Casada*, as well as its licenses with Hacienda. The assignment agreement stated:

> This assignment also includes and covers any and all claims, damages and causes of action by or against any party which in any way relate to or arise from the [songs], as well as the right to file suit, make claims and settle same on any terms Assignee deems advisable.

(Docket Entry No. 28, Ex. K at 1). The agreement was backdated to 2000. (*Id.*). Sanchez gave Jedasa a $5,000.00 check. (*Id.*, Ex. K at 5).[2]

On August 1, 2011, Sanchez assigned "any and all rights" in several musical compositions, including *La Prieta Casada*, and "any and all copyrights" in the song to his attorney-in-fact, David Showalter. (Docket Entry No. 88-9). In November 2011, after Showalter unsuccessfully demanded that Hacienda pay Sanchez royalties for its use of *La Prieta Casada*, Sanchez (and only Sanchez) sued Hacienda and various other defendants, asserting claims for copyright infringement, breach of contract, fraud, and fraudulent misrepresentation. (Docket Entry No. 16). Sanchez sought a declaratory judgment that he is the exclusive owner of all rights to *La Prieta Casada*, that the defendants were not entitled to possess or use the song,

---

[2] Hacienda disputes whether this check was consideration for the assignment or paid to stop Quiroz from falsely claiming title to Sanchez's copyright, but as discussed below, a reasonable jury could conclude based on the check that Sanchez paid Quiroz for the assignment.

4

and that he is entitled to an accounting for all revenue and profits from the defendants' use of the song. (*Id.* at 13).

The defendants moved to dismiss. (Docket Entry No. 18). On May 11, 2012, the court granted the motion to dismiss Sanchez's fraud claims, with prejudice and without leave to amend. (Docket Entry No. 19). The court converted the rest of the motion to dismiss to a motion for summary judgment. (*Id.*). After discovery, Hacienda also moved for summary judgment on its affirmative defenses of license, waiver, and estoppel, arguing that Sanchez's copyright-infringement claim failed because Hacienda had express or implied licenses to use *La Prieta Casada*. Sanchez responded that no such licenses existed and that Hacienda lacked any authorization, express or implied, to use his song. (Docket Entry No. 31). The court denied Hacienda's motion for summary judgment, finding factual disputes material to resolving Hacienda's affirmative defenses. (Docket Entry No. 49).

After further discovery, Hacienda again moved for summary judgment, now arguing that limitations barred Sanchez's ownership claim and therefore his copyright claim. (Docket Entry No. 83); *see also Seven Arts Filmed Entertainment Ltd. v. Content Media Corp., PLC*, 733 F.3d 1251, 1255 (9th Cir. 2013) (following the rule adopted in other circuits that if "the gravamen of a copyright infringement suit is ownership, and a freestanding ownership claim would be time-barred, any infringement claims are also barred.").

This court granted Hacienda's motion for summary judgment. (Docket Entry No. 104). After reviewing the evidence on the song's ownership history, the court concluded that "[t]he summary judgment evidence establishes that an ownership dispute concerning *La Prieta Casada* has existed since at least 1995, meaning that Sanchez's copyright claims accrued in 1995 and the limitations period expired in 1998." (Docket Entry No. 104, at 13). The court directed the

5

parties to "file a statement identifying any issues that remain to be resolved or a proposed final judgment." (Docket Entry No. 104, at 18).

Sanchez filed a brief in which he argued that his breach-of-contract claim, his fraud claims, and his ownership interest in *La Prieta Casada* remained. (Docket Entry No. 105). Hacienda responded, contending that the court should enter final judgment. (Docket Entry No. 106, 108). Sanchez also moved to alter or amend the court's grant of summary judgment under Rule 59(e). (Docket Entry No. 109).

On December 24, 2014, the court denied Sanchez's Rule 59(e) motion, concluding that his ownership and therefore his copyright claim was time-barred and that his fraud claims were properly dismissed. (Docket Entry No. 111). The court directed Sanchez to respond to Hacienda's arguments that his breach-of-contract claim failed as a matter of law and that final judgment should be entered. Hacienda filed a surreply, to which Sanchez responded, (Docket Entry Nos. 112, 113).

The arguments on the contract claim are analyzed below.

**II.     Analysis**

Sanchez argues that because his breach-of-contract claim "is separate and distinct from the copyright infringement claim," it survived Hacienda's first motion for summary judgment and "was not even addressed" in the second. (Docket Entry No. 105, at 3). Sanchez bases the contract claim on Quiroz's 2010 assignment (backdated to 2000) of "all contracts, accounts, licenses, statements, documents and written or recorded agreements within his possession or control pertaining to the song *La Prieta Casada* and all the other works." (Docket Entry No. 41-9, at 20); (*see also id.* ("This assignment includes and covers any and all claims, damages and causes of action by or against any party which in any way relate to or arise from the

6

Works. . . ."). Sanchez contends that this claim, which he pleaded in the alternative to his infringement claim, is still "alive, unresolved, and not subject to final judgment at this time." (Docket Entry No. 105, at 3).

Hacienda argues that Sanchez lacks standing to assert this claim, it is time-barred, and it otherwise fails. (Docket Entry No. 108, 112).

### A. Whether Sanchez Has Standing to Sue for Breach of Contract

Hacienda argues that Sanchez lacks standing because Quiroz's 2010 assignment did not transfer prior accrued causes of action to Sanchez, and because Sanchez transferred all of his rights to Showalter before bringing suit.

#### 1. Quiroz's Assignment to Sanchez

Assigning a copyright does not automatically give the assignee the right to sue for accrued claims. *Prather v. Neva Paperbacks, Inc.*, 410 F.2d 698, 700 (5th Cir. 1969); *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991); *Seastrunk v. Darwell Integrated Tech., Inc.*, 2005 WL 1667811, at *3–4 (N.D. Tex. July 15, 2005). "Unless the assignment of copyright contains language explicitly transferring causes of action for prior infringements, the assignee cannot maintain a suit for infringements which happened before the effective date of the assignment." *Prather*, 410 F.2d at 700 (quotations and citation omitted). If, however, an assignment's effective date predates accrued causes of action, the assignee has standing to sue for them.

*Beastie Boys v. Monster Energy Co.*, 983 F. Supp. 2d 354 (S.D.N.Y. 2014), is a good example. The defendants argued that the later "Assignment Agreement did not convey to the Beastie Boys the right to sue for earlier infringements, because it lacked any clear language to that effect." *Id.* at 361-62. The court was "unpersuaded" because "the Assignment Agreement

7

expressly state[d] that it [wa]s effective as of December 2, 1999" and the "backdated Assignment Agreement explicitly transfer[ed] all claims that accrued after the Effective Date." The court noted that "[c]ontract law gives effect to such retroactive arrangements." *Id.*; *see also Intimo, Inc. v. Briefly Stated, Inc.*, 948 F.Supp. 315, 317 (S.D.N.Y. 1996); *U.S. Bank, N.A. v. Squadron VCD, LLC*, No. 10 Civ. 5484(VB), 2011 WL 4582484, at *5 (S.D.N.Y. Oct. 3, 2011) *aff'd*, 504 Fed. App'x 30 (2d Cir. 2012).

Quiroz's 2010 assignment to Sanchez had an effective date of April 2000. (Docket Entry No. 88-6). The contract assigned Sanchez "any and all rights in and to the song *La Prieta Casada*," including "any and all claims, damages and causes of action by or against any party which in any way relate to or arise from" the song, "as well as the right to file suit, make claims and settle on any terms [Sanchez] deems advisable." (*Id.*). The assignment gave Sanchez standing to sue on claims that accrued after April 2000.

The next issue is whether Sanchez nonetheless lacks standing because he transferred his rights in the song to Showalter, his attorney, before filing this suit.

### 2. Sanchez's Assignment to Showalter

"Under Texas law, once a cause of action has been assigned to another person, the assignor is precluded from bringing suit 'unless the assignor has retained some right or interest therein.'" *Advanced Nano Coatings, Inc. v. Hanafin*, 478 F. App'x 838, 843 (5th Cir. 2012) (quoting *River Consulting, Inc. v. Sullivan*, 848 S.W.2d 165, 169 (Tex. App.–Houston [1st Dist.] 1992, writ denied), *overruled on other grounds by Formosa Plastics Corp. USA, v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 46–47 (Tex. 1998)). "'[T]he assignment does not affect the justiciability of the cause of action,'" however, "as 'long as the original parties remain in the suit[,] and the rights of the person who was plaintiff at the time of the

commencement of the suit remain in issue.'" *Id.* (quoting *Bay Ridge Util. Dist. v. 4M Laundry*, 717 S.W.2d 92, 97 (Tex. App.–Houston [1st Dist.] 1986, writ ref'd n.r.e.)); *see also* 6A WRIGHT-MILLER-KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1545 ("When all the rights to a claim have been assigned, courts generally have held that the assignor no longer may sue.").

Several cases illustrate this standing rule. In *Advanced Nano Coatings*, two plaintiffs, ANC and Vado, sued the defendant for breaching his employment contract with Vado. Before filing suit, Vado "conveyed to ANC all its rights" under the employment contract, "except that it retained a small royalty interest on any technology" that the defendant developed. 478 F. App'x at 841. "[W]hile [the suit] was still pending, ANC assigned all of its rights pursuant to the employment contract back to Vado." *Id.* at 843. The district court ruled that Vado's original "assignment of its rights under the employment contract to ANC divested Vado of any legal standing to file suit for breach of contract" and that "ANC's subsequent assignment to Vado of all its rights under the employment agreement did not cure the standing defect because standing must exist at the time the suit is filed." *Id.* The Fifth Circuit reversed, concluding that the parties had standing because both ANC and Vado, "the assignor and the assignee," had "at all times been party to the suit," which made the "rule precluding an assignor from bringing suit based on rights it assigned inapplicable." *Id.*

In *In re Isbell Records, Inc.*, 586 F.3d 334 (5th Cir. 2009), the copyright holder, Alvert Music, assigned "fifty percent (50%) of his interest now owned or subsequently purchased" in a copyright, including "all claims for infringement of the copyrights whether now or hereafter existing." *Id.* at 336. The defendant, DM Records, moved to dismiss for lack of standing because "the Assignment transferred" Alvert Music's "rights to the copyright infringement claims" to "a third party." *Id.* The district court granted the motion. The Fifth Circuit reversed,

9

finding that "the Assignment did not deprive Alvert Music of its right to pursue the copyright infringement claims."  Properly read, the assignment contract "clarifie[d] that the 50% share [was] a full share, rather than an income, participation, royalty, or some other limited share in the copyright."  *Id.*

Sanchez, unlike the copyright holder in *In re Isbell*, assigned "any and all rights" and "any and all copyrights" in *La Prieta Casada* to Showalter.  And unlike the copyright holder in *Advanced Nano Coatings*, Sanchez did not retain a royalty interest and Showalter was not "a party to the suit" against Hacienda.  478 F. App'x at 843.  Sanchez lacks standing to sue for breaches of the alleged licensing agreements between August 1, 2011, when he assigned his rights to Showalter, and November 2, 2011, when he filed this suit.

Sanchez does have standing to sue for breaches of the alleged licensing agreements that accrued *before* he transferred his rights to Showalter.  *See In re Isbell Records, Inc.*, 774 F.3d 859, 869 (5th Cir. 2014) (the court denied Rule 60(b) relief because "[e]ven if DM's interpretation of the Security Agreement as transferring Bell's entire ownership interest . . . has merit, this establishes only that Bell would have lacked standing to sue in 2006," but "Bell originally filed his complaint in this action in 2002," and "standing is determined as of the commencement of the suit." (quotation and alteration omitted)).  Unlike the copyright holder in *In re Isbell*, Sanchez did not assign Showalter "all claims for infringement of the copyrights whether now or hereafter existing."  586 F.3d at 336.  Instead of assigning all prior accrued claims as well as future claims, Sanchez assigned Showalter only "any and all rights"—that is, future unaccrued claims—in *La Prieta Casada*.  Sanchez retained his right to sue for alleged licensing-agreement breaches before his assignment to Showalter, and Showalter lacks standing to sue for those breaches.  *Seastrunk v. Darwell Integrated Technology, Inc.*, 2005 WL 1667811

10

(N.D. Tex. July 15, 2005), provides an example of a similar pattern. A computer code copyright holder entered into a 20-year Royalty Agreement with DTS in 1989. DTS paid royalties under that Agreement until 2001 and then used the program without paying royalties. *Id.* at *1. In 2004, the copyright holder assigned Seastrunk "all rights in the Software, including all rights of copyright, and also including all rights to assert any claims that the Software has been infringed by third parties or that they have wrongfully made derivative works of same." *Id.* The agreement did not expressly assign causes of action that had already accrued under the Royalty Agreement. In 2005, Seastrunk sued DTS, alleging pre-assignment copyright infringement and breaches of the Royalty Agreement. DTS moved to dismiss for lack of standing. The district court granted the motion, reasoning that "Seastrunk may not bring accrued claims because the Assignment Agreement does not expressly assign him the right to do so." *Id.* at *4. "Because Seastrunk was neither a signatory nor a third-party beneficiary of the Royalty Agreement, and the Assignment Agreement d[id] not expressly give him the right to bring causes of action that accrued before the copyright was assigned, Seastrunk lack[ed] standing to sue for breach of the Royalty Agreement." *Id.* at *4.

Here, like Seastrunk, Showalter lacks standing to sue for pre-assignment breaches of the alleged licenses because the assignment did not give him the right to do so. Sanchez, but not Showalter, has standing to sue for breaches that allegedly occurred before August 1, 2011. Showalter, not Sanchez, has standing to sue for breaches allegedly occurring after that date.[3]

---

[3] Hacienda also points to *Guajardo v. Freddie Records, Inc.*, Civil Action No. 4:10-cv-2024, in which the magistrate judge's memorandum and recommendation concluded that Sanchez had "no standing to assert" a copyright infringement claim because of his August 1, 2011 transfer to Showalter. The district court has not yet adopted the magistrate judge's recommendation, and, in any event, it fails to account for the rule that an assignor retains prior accrued causes of action unless they are expressly relinquished. *See Seastrunk*, 2005 WL 1667811, at *3-4.

11

### B.     Whether Limitations Bars Sanchez's Breach-of-Contract Claim

Hacienda argues that the Texas four-year statute of limitations bars Sanchez's breach-of-contract claim because Hacienda refused to pay Jedasa royalties at least as early as 2005, when Quiroz took over Jedasa, and Sanchez sued in 2011, two years too late. *See* Tex. Civ. Prac. & Rem. Code § 16.051. This argument is only partly persuasive. "[A] breach of contract claim accrues every time a royalty payment is due but not paid." *Bell v. Philadelphia Int'l Records*, 981 F. Supp. 2d 621, 625-26 (S.D. Tex. 2013) (citing *Lyle v. Jane Guinn Revocable Trust*, 365 S.W.3d 341, 355 (Tex. App.–Houston [1st Dist.] 2010, pet. denied) (if an agreement calls for periodic payments, a cause of action for the payments arises at the end of each period payment is due)). Sanchez assigned "any and all rights" in *La Prieta Casada* to Showalter on August 1, 2011. (Docket Entry No. 88-9). He filed this lawsuit on November 2, 2011. Applying the royalty-accrual rule, Sanchez's breach-of-contract claim is barred as to all royalty payments due on or before November 2, 2007. Sanchez's claims for unpaid royalties between November 2, 2007 and August 1, 2011, are timely.

### C.     Whether Sanchez's Breach-of-Contract Claim Otherwise Fails

Hacienda contends that this claim fails because Sanchez argued in support of his copyright infringement claim that Hacienda never had permission—a license—to use his song, and there was therefore no license contract to breach. Federal Rule of Civil Procedure 8(d) allows parties to "state as many separate claims or defenses as [they have], regardless of consistency." Fed. R. Civ. P. 8(d); *see also Banco Continental v. Curtiss Nat'l Bank of Miami Springs*, 406 F.2d 510, 513 (5th Cir. 1969). Hacienda was entitled to summary judgment on Sanchez's copyright claim. But Sanchez may proceed on alternate theories of liability, such as

12

breach of contract.  *See United States v. Medica-Rents Co.*, 285 F. Supp.2d 742, 776 (N.D. Tex. 2003).  The issue is whether genuine factual disputes preclude summary judgment on this claim.

Hacienda notes that Quiroz admitted in his deposition that he had no contracts with Hacienda and that Sanchez never paid him for the assignment of the alleged licenses.  (*See* Docket Entry No. 83-6, at 7).  But, Sanchez has pointed to record evidence of several licenses between Hacienda and Jedasa allowing Hacienda to make and distribute recordings of *La Prieta Casada* in exchange for the statutory royalty rate.  (Docket Entry 18-1, at 3).  Many of these licenses were scheduled to last until 2010, within the four-year limitations period.  (*Id.* at 3).  Sanchez also pointed to a $5,000 check that he alleges he wrote to Quiroz in exchange for the 2010 (backdated to 2000) assignment to him of Jedasa's rights in *La Prieta Casada* and any licenses Jedasa had with Hacienda.  In response, Hacienda argues that Sanchez's deposition testimony that Quiroz "did not have any rights over [Sanchez's] song" and his interrogatory answer that the assignment payment was "in consideration of Mr. Quiroz's agreement to stop making false claims concerning rights to *La Prieta Casada*" preclude summary judgment. (Docket Entry Nos. 41-5, at 26-29, 122; 41-20).  A reasonable jury, however, could interpret these statements as consistent with Sanchez's understanding that he had paid Quiroz $5,000 to clear any ambiguity over his rights to *La Prieta Casada* and to obtain Jedasa's licenses with Hacienda.[4]  Given the conflicting record evidence, summary judgment is inappropriate.

---

[4] Hacienda also argues that by nonsuiting Jedasa, Sanchez has relinquished his ability to sue Hacienda for breach of contract.  But this misses the point.  Sanchez's breach-of-contract claim is based on Jedasa's assignment to him of the Jedasa license with Hacienda.  As Hacienda acknowledges, Sanchez "stands in the shoes of Jedasa" as its assignee and may sue Hacienda for its failure to pay *Jedasa* royalties as required by the alleged license agreements regardless of Sanchez's nonsuit of Jedasa.  (Docket Entry No. 112).

## IV.     Conclusion

Sanchez's breach-of-contract claim remains to be tried. The parties are directed to appear for a status and scheduling conference on **April 2, 2015**, at 5:00 p.m. in Courtroom 11-B, 515 Rusk Street, Houston, Texas.

        SIGNED on March 17, 2015, at Houston, Texas.

                                                        Lee H. Rosenthal
                                      United States District Judge